(127 App. Div. 450.)

MURPHY v. HUDSON RIVER TELEPHONE CO.

(Supreme Court, Appellate Division, Third Department.    June 18, 1908.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—EVIDENCE—SUFFICIENCY.

In an action for personal injuries received while in the employment of defendant telephone company, the evidence *held* to justify a verdict for plaintiff on the theory that he was brought into contact with the electric current because of metal wires concealed in the tape line he was directed to use.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 958–968.]

2. SAME—PROXIMATE CAUSE OF INJURY—CONCURRING CAUSES.

Where defendant negligently gave plaintiff a tape measure constructed of copper wire to use in measuring the distance between the wires, and plaintiff was injured by the electric current coming into contact with the metal tape, defendant's negligence in furnishing an improper tape was the primary cause of the injury, though the tape was brought into contact with the electric wire by the act of a fellow servant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 515–524.]

3. SAME—CONTRIBUTORY NEGLIGENCE.

Where defendant telephone company gave plaintiff, a lineman, a tape measure which contained metal wires concealed inside, and directed him to measure the distances between the wires, plaintiff, not knowing that the tape contained metal which might come into contact with the telephone wires, was not guilty of contributory negligence, where the tape came into contact with the wires and injured him.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 706.]

Smith, P. J., and Sewell, J., dissenting.

Appeal from Trial Term, Warren County.

Action by Dennis J. Murphy against the Hudson River Telephone Company. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

The action is for negligence. The plaintiff was an experienced lineman in the employ of the defendant. The defendant desired to have certain measurements made between its wires and high tension wires of other companies where they crossed each other. To make these measurements it sent one Phillips, an engineer from its office in Syracuse, to Glens Falls. The superintendent of the defendant at Glens Falls told the plaintiff, according to the latter's testimony, to go with Phillips and take the measurements of high tension wires and do as he told him, and to take orders from him. Phillips and the plaintiff prosecuted this work together for a day in making these measurements in several places. On the next day, April 4th, they came to the pole where the accident happened. Phillips brought with him from the office of the defendant at Syracuse a tape which to all appearances was an ordinary linen tape. Concealed on the inside of this tape were a number of small copper wires extending through its entire length. When they got to the pole in question, which was about 40 feet high, Phillips directed the plaintiff to put on his climbing hooks and go up the pole, and told him to take the tape up with him. The pole had at the top two cross-arms, one on either side of the pole, to which were attached four high tension wires, and about two feet below were two other cross-arms on opposite sides of the pole, upon which were two other high tension wires. Several feet below on the same pole were a number of telephone and guy wires. The plaintiff climbed up the pole and held one end of the tape against the under side of one of the lower cross-arms. He was then standing with his feet on the pole, about six feet below such lower

cross-arms. Phillips, who remained on the ground, held the other end of the tape and noted the measurement from the under side of that arm to the ground. Plaintiff was then told by Phillips to measure the next arm above, and he took another step up the pole, and held the tape under one of the upper arms. He says, in doing so, he did not touch any guy wires, or any other wires, with his hands, or with any part of his body, and that he was standing still on the pole, with the hook on his foot jabbed into the pole, with his left arm about it, and the tape in his right hand, holding it to the bottom of the upper cross-arm. He said on his direct examination that, after he held the tape to that top arm, Phillips stepped over towards the pole to get the tape next to the pole, and that is all he remembered. He fell from the pole to the ground and was severely injured. He was burned by electricity on his right hand, under his right shoulder, and on his right foot just below the ankle. On redirect examination he said that Phillips held the tape in his left hand and gave it a kind of a whip to straighten it up and down the pole, gave it a shake, and that was the last he remembered. The claim of negligence was in furnishing for the plaintiff's use the tape in question, having concealed therein copper wires, and that it was an improper or defective appliance for the use which the plaintiff was required to make of it. The plaintiff had a verdict, and from the judgment entered thereon the defendant has appealed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, SEWELL, and COCHRANE, JJ.

Erskine C. Rogers, for appellant.
George S. Raley, for respondent.

CHESTER, J. The appellant insists that the proof is insufficient to show in what manner the accident happened, and leave it quite as certain that it happened because the plaintiff's shoulder came in contact with a high tension wire as because he was shocked by the use of the tape, and, therefore, that the jury were left to speculate as to which of these causes was responsible for the accident. The high tension wires carried electric current at a pressure of 23,000 volts according to the proof, and the appellant's claim is based largely upon the assumption that that amount of electricity could not have been conveyed through the tape into the plaintiff's body, as it would have burned off or consumed the wires in the tape, and, therefore, that the electricity must have come from the accidental contact of the plaintiff's shoulder, where it was burned, with the wire, and not through the tape. This view leaves out of the question the fact that the tape had conducting capacity sufficient to carry enough electricity to shock the plaintiff, without burning out the wires within it, and without carrying anything like the total current flowing in the high tension wires. There is no doubt that a considerable amount of electricity passed through this tape upon the occasion when the plaintiff was injured, for there was a burn upon it where he held it in his hand, and also another one a short distance below where it might have come in contact with one of the high tension wires. Phillips, also, at the time plaintiff was shocked, received a blister where he held the other end of the tape in his hand, and also received a considerable shock which sent him back for quite a distance from where he stood, but did not knock him down. Just at the moment when Murphy fell, a witness on the ground also saw a streak of fire up at the top of the pole.

There is no proof that the shock which caused plaintiff to fall was received near his shoulder, except as that may be inferred from the

burn there; and the jury may have found that such burn was caused by his coming in contact with one of the lower high tension wires in falling, rather than by carelessly getting himself against one of them in making the measurement. That it was caused in falling is fairly sustained by the evidence; for he was an experienced lineman, and knew these were high tension wires, and knew the danger of touching them. He also testified that he did not touch them as he was attempting to make the measurement, and Phillips swore that he did not know how the shock was received. It seems to me that there was evidence to make it a question for the jury as to whether or not the shock was received by the plaintiff through the tape, and the verdict of the jury to that effect is supported by sufficient evidence.

A somewhat difficult question arises on the plaintiff's testimony that Phillips whipped or shook the tape against the high tension wire in straightening it out to take the measurement. It is claimed by the appellant that, if Phillips did this, it was an act of carelessness on his part while he was not exercising superintendence, but while he was engaged with the plaintiff in a mere detail of the work; that is, in holding one end of the line to make the measurement while the plaintiff was holding the other. But the jury has found that the accident was caused by the tape coming in contact with the high tension wire. If the tape had not been negligently or improperly furnished to the plaintiff for this work, and had been the ordinary linen tape the plaintiff supposed it was, no matter how much switching or whipping of it Phillips did, the accident would not have happened. It was, therefore, primarily caused by the improper tape, and not by the switching of it, or it might be claimed that each of these were causes of the injury. If that view be taken, it would bring in the well-known rule stated in the Ring Case. Ring v. City of Cohoes, 77 N. Y. 83, 33 Am. Rep. 574. There it was held that where several proximate causes contributed to the accident, and each is an efficient cause without the operation of which the accident would not have happened, it may be attributed to any of the causes; but it cannot be attributed to a cause unless without its operation the accident would not have happened. If it had not been for the furnishing of the improper tape, the plaintiff would not have been injured. Therefore that was the negligence that caused the accident, and the furnishing of it was the act of the superintendent, and not the act of Phillips while he was engaged in a detail of the work. The negligence of the appellant in furnishing this tape is emphasized by some evidence of Phillips given upon cross-examination, which clearly showed that he knew its dangerous character. He testified that he knew there was something in it to keep it from stretching—some metal wire; that he knew what the result would be if the tape touched a high tension wire.

I think there is nothing in the case showing that the plaintiff was guilty of contributory negligence. He was an experienced lineman, it is true; but the character of the work he was engaged in when he was injured, so far as it required him to use the tape in question, was not such as he was accustomed to do as a lineman, and the proof is undisputed that he knew nothing of the character of the tape, that he supposed it was an ordinary linen tape, and the fact that it had con-

cealed therein copper wires was not apparent by ordinary observation. I am inclined to believe that there was enough in the evidence to sustain the verdict of the jury, and think that the judgment entered thereon should be affirmed.

Judgment and order affirmed, with costs. All concur, except SMITH, P. J., and SEWELL, J., who dissent.